UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM HERBERT, *on behalf of himself and all others similarly situated*, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 3:19-CV-01856-X |
| LTC DELIVERY LLC and MEDICINE CHEST INSTITUTIONAL PHARMACY LLC, | § § § § § § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Parties' Joint Motion to Approve FLSA Collective Action Settlement Agreement. [Doc. No. 56]. For the reasons explained below, the Court **GRANTS** the motion **IN PART** and **APPROVES** the settlement agreement except for the service awards. The parties must file supplemental briefing on the service awards within 14 days of this order.

**I. Factual Background**

Plaintiff William Herbert and a group of opt-in plaintiffs worked as delivery drivers for LTC Delivery, LLC (LTC). Medicine Chest Institutional Pharmacy, LLC (M Chest) contracts with LTC to deliver pharmaceutical products to M Chest's Texas customers. And LTC engages with drivers to perform the deliveries for M Chest. LTC classifies the drivers as independent contractors. Herbert sued the defendants

1

under the Fair Labor Standards Act (FLSA) alleging that the drivers were misclassified as independent contractors, that they were jointly employed by LTC and M Chest, and that the defendants violated both minimum wage and overtime requirements. The defendants deny these allegations in their entirety. The Court granted the parties' joint motion for conditional certification, and following the issuance of notice, sixty-five opt-in plaintiffs joined the collective action.

The parties executed a settlement agreement in September 2021, and then filed the instant motion to approve the settlement agreement. The defendants deny the allegations in the suit but stipulate and agree that, for settlement purposes, the requisites for establishing collective action certification under the Fair Labor Standards Act are met with respect to the plaintiffs.

The settlement provides for payment of a total of $500,000 to be distributed to 65 opt-in plaintiffs. One-third of the settlement fund, $167,666.67, is allocated as attorneys' fees and costs to counsel. Herbert, the named plaintiff, will receive a $7,500 service award and opt-in plaintiff Charles Leake will receive a $2,500 service award. After attorneys' fees, costs, and service awards, the average settlement share is $4,974.36—the opt-in plaintiffs will receive $170.11 per work week. The defendants will receive a full release of the collective members' claims in this action. Specifically, the opt-in plaintiffs agreed to release all claims "arising out of or related to the payment of wages that accrued while working [for the defendants]' at any time during the" three years before the date each plaintiff opted-in to the lawsuit.[1]

---

[1] Doc. No. 56-1 at 5.

The plaintiffs will not "release [any] prospective rights or non-wage claims."[2] And "Non-Responding Opt-in Plaintiffs will not release any claims that they may have against Defendants, as Defendants will seek dismissal of their claims without prejudice, and their rights will not otherwise be affected by the Settlement Agreement."[3]

## II. Legal Standards

"Under section 216(b) [of the Fair Labor Standards Act], 'when employees bring a private action for back wages under the [Fair Labor Standards Act], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.'"[4] In scrutinizing the settlement, the Court must evaluate whether: (1) "the settlement resolves a bona fide dispute over [Fair Labor Standards Act] provisions and (2) that the resolution is fair and reasonable."[5] "The decision to approve a class action settlement is left to the district court's sound discretion."[6]

---

[2] Doc. No. 56 at 9.

[3] *Id.*

[4] *Diaz v. Panhandle Maint., LLC*, No. 2:18-CV-097-Z, 2020 WL 587644, at *2 (N.D. Tex. Feb. 6, 2020) (Kacsmaryk, J.) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dept. of Labor, Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

[5] *Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *1 (N.D. Tex. July 1, 2015) (O'Connor, J.); *see also Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) ("[P]arties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due." (quoting *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005))); *Lynn's Food Stores*, 679 F.2d at 1355 (a court can enter a stipulated judgment when it "determine[s] that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.").

[6] *Lee*, 2015 WL 13729679, at *1.

## III. Analysis

### A.     Bona Fide Dispute

First, the Court must determine whether a bona fide dispute exists as to the number of hours worked or compensation due.[7] "[T]he mere presence of a lawsuit is 'insufficient to satisfy the bona fide dispute requirement.'"[8] "[T]here must . . . be some doubt regarding whether the plaintiffs will succeed on the merits. 'In essence, the [c]ourt must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear [Fair Labor Standards Act] requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'"[9] "[W]hile the Court must give comprehensive consideration to all relevant factors, the [Court's review] must not be turned into a trial or a rehearsal of the trial."[10]

The parties point to multiple remaining bona fide disputes: First, they disagree about whether the plaintiffs were properly classified as independent contractors who did not receive overtime and minimum wages. Second, M Chest specifically contends that even if the drivers were properly classified as employees, it is not a joint employer under the law and therefore not responsible for any of the claimed damages. Third, the defendants maintain that decertification of the class would be required due

---

[7] *Diaz*, 2020 WL 587644, at *2.

[8] *Id.* (quoting *Lee*, 2015 WL 13729679, at *5).

[9] *Lee*, 2015 WL 13729679, at *5 (alteration in original) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008)).

[10] *Collins*, 568 F. Supp at 720.

to individualized issues relating to each opt-in plaintiff's claim—which the plaintiffs oppose. Finally, the parties dispute the appropriate measure of damages.

Based on the disputed issues above, the Court concludes that there are doubts about whether the plaintiffs would prevail on the merits.[11] Therefore, the Court finds the agreement is a resolution of bona fide disputes.

### B.   Fair and Reasonable

Next, the Court must determine whether the settlement agreement is fair and reasonable. In evaluating the settlement agreement, the Court must consider six factors:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.[12]

---

[11] See *Jones v. JGC Dall. LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551, at *3 (N.D. Tex. Nov. 12, 2014) (Ramirez, J.) (finding "a bona fide dispute regarding whether the overtime compensation [was] owed" where "one of the focal points of contention, i.e., whether Plaintiffs were employees, ha[d] not yet been resolved"), *report and recommendation adopted in part*, No. 3:11-CV-2743-O, 2014 WL 7336889 (N.D. Tex. Dec. 24, 2014) (O'Connor, J.); *Bass v. Berry Bros. Gen. Contractors Inc.*, No. CV 17-0947, 2020 WL 2026344, at *1 (W.D. La. Apr. 1, 2020), *report and recommendation adopted*, No. 17-CV-0947, 2020 WL 1990818 (W.D. La. Apr. 27, 2020) (finding a bona fide dispute over "FLSA provisions, including whether the plaintiffs were properly classified as independent contractors, whether the plaintiffs were properly paid on an hourly basis or whether they were misclassified and entitled to overtime pay, whether the defendant's alleged violations were made in good faith and on reasonable grounds and whether the defendant's alleged FLSA violations were willful"); *Sarabia v. Spitzer Indus., Inc.*, No. 4:17-CV-2092, 2018 WL 6046327, at *3 (S.D. Tex. Nov. 19, 2018) (finding a bona fide disputed existed where the parties disagreed over, among other things, "whether Defendant willfully violated the FLSA, . . . Defendant's liability, if any, Plaintiffs' classification as independent contractors, and the compensation due, if any"); *Nicks v. Express Courier Int'l, Inc.*, No. 4:20-CV-00250, 2021 WL 4077997, at *1 (S.D. Tex. Jan. 12, 2021) ("[R]egardless of the precise nature of the dispute, the settlement resolves a bona fide dispute between the parties over whether the Plaintiffs are covered by the FLSA at all.").

[12] *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "Although Rule 23 does not control FLSA collective actions, many courts have adopted many of Rule 23's procedures in such actions by

In "considering these factors, the court also should keep in mind the presumption in favor of finding a settlement fair and the overriding public interest in favor of settlement."[13]

Applying these factors, the Court concludes the terms of the settlement agreement are fair and reasonable. The Court finds no evidence of fraud or collusion in this case.[14] This case has been pending since 2019, and as explained above, there are numerous factual and legal issues remaining. The parties have agreed to a reasonable distribution formula, which will be used to determine the disbursement of the settlement funds to the plaintiffs. Moreover, the plaintiffs' release of claims is fair and reasonable because it is limited to only those claims "arising out of or related to the payment of wages" that they may have against the defendants and any accompanying claims for attorney's fees and costs.

1. **Service Award**

Courts may approve service awards to named plaintiffs if the awards are fair and reasonable.[15] But service awards are not always merited.[16] The parties propose a total of $10,000 in service awards to two plaintiffs: $7,500 to the named plaintiff, Herbert, and $2,500 to opt-in plaintiff Leake. While there is no ceiling on service

---

analogy, in an exercise of their discretion to manage the litigation of collective actions under § 216(b)." *Diaz*, 2020 WL 587644 at *3 (quoting *Collins*, 568 F. Supp. 2d at 721).

[13] *Lee*, 2015 WL 13729679, at *3 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

[14] *Cunningham v. Kitchen Collection, LLC*, No. 4:17-CV-770, 2019 WL 2865080, at *2 (E.D. Tex. July 3, 2019) (quoting *Lee*, 2015 WL 13729679, at *5) ("[T]he Court may presume that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary.").

[15] *Lee*, 2015 WL 13729679, at *4.

[16] *Id*.

awards in the Fifth Circuit, the court in *Lee* noted that "where service awards are paid out of a common fund, they tend to be far less than 1% of the common fund."[17] It also noted that "some cases have also evaluated service awards for reasonableness by comparing them to awards in similar litigation and without any reference to the common fund."[18]

The service awards here do not pass muster under either test. Here, the service awards are 1.5% and .5% of the common fund, respectively. In support of the reasonableness of the service awards, the parties point to *Camp v. Progressive Corp.*, where the court approved incentive payments of up to $10,000.[19] But in that case, the incentive payments were based on an approximately $5.4 million award.[20] Here, the fund is only $500,000—less than 1/10 of the size. Further, the Court cannot properly compare the award in this case to other cases because the parties have failed to adequately describe the plaintiffs' level of involvement in the case.[21] The parties state that Herbert and Leake both provided a declaration in support of the motion for conditional certification and that Leake "provided significant assistance to class counsel."[22] But the motion is lacking detail about Herbert's and Leake's involvement

---

[17] *Id.* at *5 (collecting cases).

[18] *Id.*

[19] *Camp v. Progressive Corp.*, No. Civ.A. 01-2680, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004).

[20] *Id.*

[21] *See In re Wells Fargo Wage & Hour Emp't Pracs. Litig.*, 18 F. Supp. 3d 844, 852 (S.D. Tex. 2014) (analyzing a service award by "considering the level of involvement of the named plaintiffs and the amount of service awards provided in similar litigation").

[22] Doc. No. 56 at 9.

in the case.[23]  Accordingly, the Court finds that the parties have not provided sufficient justification for the size of the service awards in this case.  The parties must submit supplemental briefing on the service awards within 14 days of this order.

### 2. Attorneys' Fees

The Court must also assess the reasonableness of the proposed attorneys' fees.  The Court concludes that the amount of attorney's fees is fair and reasonable.  The plaintiffs' attorneys are awarded $167,666.67—one-third of the $500,000 settlement fund.  Counsel stated that they have substantial experience in wage and hour litigation, worked over 250 hours on this case, and their contingency fee agreement provides for attorney's fees up to 40% of the gross recovery—substantially more than what they are receiving in this case.  Counsel also advanced $10,000 in costs which they agreed to include within the one-third amount.  This finding is consistent with other settlement agreements approved in this district.[24]

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motion **IN PART**, **APPROVES** the settlement, pursuant to and as set forth in the parties' Settlement Agreement and Release, except for the proposed service award.  The parties are

---

[23] The Court also notes that in *Lee*, the court found instances of named plaintiffs who were awarded 0.55% of a settlement fund for their court appearances, interviews, and depositions. *Lee*, 2015 WL 13729679, at *8 (citing *Quintanilla v. A & R Demoliton Inc.*, No. H-04-1965, 2008 WL 9410399, at *3 (S.D. Tex. May 7, 2008)).

[24] *See, e.g., Lee*, 2015 WL 13729679 (finding a $260,149.64 award of attorney's fees to be fair and reasonable out of a $575,000 settlement fund); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 675 (N.D. Tex. 2010) (Fitzwater, J.).

**ORDERED** to file supplemental briefing justifying the service awards within 14 days of this Order.

    **IT IS SO ORDERED** this 20th day of May, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE